UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Petitioner, | |
| v. | CAUSE NO. 3:24-CV-229-PPS-JEM |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed a habeas petition challenging the disciplinary decision (WCC-23-12-2898) at the Westville Correctional Facility in which a disciplinary hearing officer (DHO) found him guilty of possessing a cellphone in violation of Indiana Department of Correction Offense 121. Following a hearing, he was sanctioned with a loss of one hundred eighty days earned credit time and a demotion in credit class.

Before turning to the merits, I will address the pending motions filed by Scruggs. He has filed a motion to strike the Warden's sealed exhibits, arguing that they were not part of the administrative record. [ECF 32.] However, these exhibits, which purport to show the removal of a cellphone from Scruggs' cellphone, bear at least some relation to the disciplinary decision. *See Olayan v. Holder*, 833 F. Supp. 2d 1052, 1058 (S.D. Ind. 2011) ("[Motions to strike are] ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial.") (citation omitted). Therefore, I deny the motion to strike.

Scruggs also filed a motion to reconsider the order granting the Warden's motion to file exhibits under seal. [ECF 33.] Evidence containing sensitive information that, if disclosed, could be harmful to other individuals or compromise the security of the facility may be filed under seal. *See Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003); *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994); *Wells v. Israel*, 854 F.2d 995, 999-1000 (7th Cir. 1988). Here, the Warden has plausibly asserted that allowing Scruggs to view the sealed exhibits would allow Scruggs to learn the capabilities of the prison surveillance system and allow him to avoid detection in the future. [ECF 22.] Scruggs responds that he has received similar evidence in other cases, but the specific circumstances of those disclosures are unclear, and occasional lapses in security do not fatally undermine the validity of such security concerns. The motion to reconsider is denied.

Scruggs filed what he called a "Motion for Investigation into Warden's Interference." [ECF 36.] This relates to Scruggs' claim that the Warden is responsible for the "Theft of (his) documents." [*Id.* at 3.] However, it is not the court's role to conduct investigations on behalf of the parties. The motion to investigate is denied.

In the traverse [ECF 37],[1] Scruggs waives his claims under the Equal Protection Clause and relating to the loss of the opportunity to earn case plan credit time. Consequently, I will not consider any habeas claims waived in the traverse.

---

[1] Scruggs also filed a motion to extend the time to file his traverse, [ECF 29] which I grant.

Scruggs argues that he is entitled to habeas relief because the administrative record lacked sufficient evidence to support the finding of guilt. But the standard of proof in the review of prison disciplinary matters is very low. All that there need be is "some evidence" in the record to support the finding. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Indeed, even "meager proof" will suffice. *Id.* Additionally, it is not within my province "to assess the comparative weight of the evidence underlying the disciplinary board's decision." *Id.* Even if there is nothing more in the record than the conduct report, that by itself is sufficient to satisfy the "some evidence" standard. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

In this case, the administrative record includes a conduct report, and, in the narrative portion of the form, an investigator represented as follows:

> On December 13, 2023, at approximately 10:30 a.m., I, Investigator Elizabeth Johnson, was activated for a shakedown at Westville Correctional Facility Restrictive Housing Unit (RHU). During the shakedown of the cells, I was assigned to B8-202L that was assigned to incarcerated individual Scruggs, Christopher 957096. During the shakedown, I found a black cellular device (Android) between towels. An altered charger was located within I/I Scruggs legal paperwork. I/I Scruggs was in possession of unauthorized cellular device.

[ECF 21-1 at 1.] Other portions of the conduct report appear to contradict the narrative portion; specifically, the time of incident is noted as 6:30 a.m., and the place of incident states, "WCU A-1; other." *Id.* The administrative record also includes a photograph of the cellphone and the charger. *Id.* at 2. It includes a video recording summary, stating, "[a]t 10:39:59 A.M. Offender Scruggs can be seen being escorted out of Cell B8-202. Staff can be seen going to Cell B8-202." [ECF 21-5.] Scruggs argues that the discrepancies in

3

the conduct report relating to the time and location of the offense render it unreliable. But it is plain to me that the reference to "6:30 am" is nothing more than a scrivener's error. This is because the video recording summary adequately resolves these discrepancies by referencing the time and location in the narrative portion of the conduct report.

Scruggs also maintains that the video surveillance recording and two still photographs in which correctional staff are seen removing the cellphone from Cell B8-202 were not part of the administrative record because they were not specifically listed on the hearing report. However, the hearing report referenced the existence of the video recording, and departmental policy indicates that requested video recordings are part of the administrative record even if they are withheld from inmates for security purposes. [ECF 21-1; ECF 21-9 at 31-35.] The still photographs appear entirely derivative of the video recording. At minimum, Scruggs knew that the video recording existed and that correctional staff had reviewed it in connection with this disciplinary proceeding and had access to it. Additionally, the administrative record contains sufficient evidence even without the video recording and the still photographs. In other words, the conduct report, the cellphone photograph, and the video recording summary constitute "some evidence" to support the finding of guilt. Therefore, insufficiency of the evidence is not a basis for habeas relief.

Scruggs argues that he is entitled to habeas relief because he received seventeen years of disciplinary segregation as a result of this hearing.[2] "[A] habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief under § 2254." *Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009). "State prisoners who want to raise a constitutional challenge to . . . administrative segregation . . . must instead employ § 1983 or another statute authorizing damages or injunctions—when the decision may be challenged at all." *Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000); *see also Jaske v. Hanks*, 27 Fed. Appx. 622, 623 (7th Cir. 2001) ("Because disciplinary segregation affects the severity rather than the duration of custody, Mr. Jaske's petition was improperly brought under § 2254.").

Scruggs maintains that the disciplinary segregation prevents him from submitting a petition to restore earned credit time, but determinations on such petitions contain other components, including a lack of pending conduct reports or Class A or B conduct violations within the preceding six-month period and the completion of community service goals. [ECF 21-9 at 49-55.] As a result, the inability to submit a petition to restore earned credit time describes the loss of an opportunity to shorten a sentence rather than an entitlement to a shorter sentence or the loss of liberty interest. *See Zimmerman v. Tribble*, 226 F.3d 568, 571-72 (7th Cir. 2000) ("If the State's action will

---

[2] The Warden disputes that Scruggs received seventeen years of disciplinary segregation as a result of this hearing, pointing to the hearing report, which indicates that he received only 180 days. [ECF 21 at 25.] Scruggs' explanation on this point is difficult to follow, but, at minimum, it appears that, following this disciplinary hearing, Scruggs discovered that the inmate database reflected that he had seventeen more years of disciplinary segregation than he would have otherwise expected. In any event, for the reasons that follow, resolving this dispute is not necessary for purposes of this case.

5

inevitably affect the duration of the sentence, there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence.") (citation omitted). A petitioner "cannot use § 2254 to challenge the deprivation of an *opportunity* for accelerated release from custody." *Holleman v. Finnan*, 259 Fed. Appx. 878, 879 (7th Cir. 2008) (emphasis in original) (citing *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003); *Zimmerman*, 226 F.3d at 571–72 (7th Cir. 2000)). Because this claim does not relate to the fact or duration of his sentence, it is not a basis for habeas relief.

Scruggs argues that he is entitled to habeas relief because correctional staff denied his request to present a statement from an inmate-witness and by not writing down his arguments regarding the inadequacy of the conduct report and video recording summary. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*

According to Scruggs, he was able to convey his arguments regarding the inadequacy of the conduct report and video recording summary at the hearing even if they were not written down. [ECF 2 at 2,4.] He also maintains that another inmate would have claimed ownership over the cellphone [ECF 38-1 at 2], but the video recording remained available to the hearing officer and clearly shows that an item

6

resembling a cellphone was removed from Cell B8-202.[3] [ECF 25 at 1:30-2:15.] As a result, even if correctional staff improperly denied his request to present inmate testimony, it did not affect the outcome of the hearing. *See Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011) (applying harmless error analysis to a prison disciplinary proceeding); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (same). Therefore, this claim is not a basis for habeas relief.

Scruggs argues that he is entitled to habeas relief because the hearing officer was biased. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). "Due process does forbid officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge." *Id.* at 667.

In an unusual turn, the parties disagree as to who decided Scruggs' guilt and his sanctions. After careful review of the record, it is unclear why Scruggs would have believed that M. Fike was his lay advocate at the time of his disciplinary hearing. Scruggs attached to his petition a notice squarely identifying Sergeant Adams as his lay advocate and identifying M. Fike as a witness to her signature. [ECF 2-1 at 3.] According to Scruggs, Sergeant Adams and M. Fike were both present at the hearing, and his administrative appeal indicates that M. Fike and Sergeant Adams are different

---

[3] Scruggs does not deny that he resided in this cell during the cell search on December 13, 2023.

7

genders and that he knew M. Fike's name at the hearing. [ECF 21-6; ECF 37 at 6-7.] I find that the decisionmaker was M. Fike, who signed the hearing report declaring Scruggs guilty and issuing him sanctions. [ECF 21-4.] While other individuals may have had an opinion regarding this disciplinary proceeding, the operative opinion is the one reflected in the hearing report belonging to M. Fike.

With respect to Fike, Scruggs maintains that he was biased because Sergeant Adams told him "what to do and not to do." [ECF 37 at 6.] More specifically, according to Scruggs, a Sergeant Adams told Fike not to write down Scruggs' oral arguments and directed Fike to leave Scruggs' cell before Scruggs was ready to conclude the hearing. [ECF 2 at 2, 4.] It is not clear why not writing down Scruggs' oral statements would have had any bearing on the outcome of the disciplinary hearing or suggests improper bias. While the decision to end the hearing could theoretically affect the outcome of a hearing, the allegations on this point are vague, noting only that "the real DHO Adams ran off, came back, and [said] to Fike, 'let's go.'" [ECF 37 at 16.] Taken as a whole, the allegations suggest that the termination of the hearing was the hearing officer's reasonable response to Scruggs' instructing him to manually record Scruggs' statements as if he were his personal scribe. Further, as detailed above, his arguments were heard and the evidence he would have tried to present would not have affected the outcome of the case. Moreover, Scruggs does not suggest that Sergeant Adams advised Fike regarding the ultimate determinations regarding guilt and sanctions or that Fike was involved in the cell search or the investigation of the conduct report. Therefore, this claim is not a basis for habeas relief.

Scruggs argues that he is entitled to habeas relief because he did not receive adequate assistance from a lay advocate. "[D]ue process [does] not require that the prisoner be appointed a lay advocate, unless an illiterate inmate is involved or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (citation omitted). Scruggs' filings demonstrate his literacy, and the disciplinary charge was not particularly complex. [ECF 1, ECF 21-1; ECF 37.] Therefore, the argument that Scruggs received inadequate assistance from a lay advocate is not a basis for habeas relief.[4]

Scruggs argues that he is entitled to habeas relief because correctional staff did not provide him with a written explanation of the decision until the Warden filed a response to the habeas petition in this case. Scruggs contends that the failure to provide him with a written decision rendered him unable to argue that his requested witness statement was not entered into the administrative record. Procedural due process requires a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 564. While it may have prevented him from presenting the denial of evidence claim on administrative appeal, it did not prevent him from presenting the argument here. As detailed above, the denial of this

---

[4] Here, I will note Scruggs' strange contention that his screening officer was Sergeant Adams and that she also went by Sergeant Lopez. However, the administrative record reflects that "A. Lopez" served as the screening officer and prepared the video recording summary on the same date that Sergeant Adams agreed to serve as the lay advocate. [ECF 21-2; ECF 21-3; ECF 21-5.] The signatures also appear to be made in distinct handwriting. Moreover, even if this contention was true, it would not present a recognized basis for habeas relief.

9

witness statement amounts to harmless error. Scruggs further contends that a more complete written decision would have included his hearing arguments, but, as detailed above, the hearing arguments are unpersuasive, and there is no constitutional or departmental requirement that hearing officers include the inmate's arguments in the hearing report. [*See* ECF 21-9 at 37-38.] Therefore, the claim that Scruggs did not receive a written explanation of the decision is not a basis for habeas relief.

Scruggs further argues that correctional staff violated his right against double jeopardy by punishing him twice for the same offense. He reasons that correctional staff punished him once prior to the disciplinary hearing by placing him in a strip cell for eighty days and once after the disciplinary hearing in the form of sanctions. "[D]ouble jeopardy protections do not attach in prison disciplinary proceedings." *Portee v. Vannatta*, 105 F. App'x 855, 858 (7th Cir. 2004); *see also Decker v. Bell*, 772 F. App'x 339, 341 (7th Cir. 2019); *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996). Therefore, the argument that Scruggs was subjected to double jeopardy is not a basis for habeas relief.

Scruggs argues that he is entitled to habeas relief because correctional staff failed to allow him to pursue an administrative appeal, used the wrong forms, and did not give him a copy of the screening report. Administrative appeals, copies of screening reports, and the use of particular forms are not listed among the requirements for procedural due process for prison disciplinary proceedings enumerated in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and the Supreme Court of the United States has indicated that this list of requirements is exhaustive. *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 324 (1976)). Moreover,

10

the administrative record reflects that Scruggs was allowed to pursue an administrative appeal at both the facility and departmental levels. [ECF 21-6; ECF 21-7; ECF 21-8.] Additionally, the failure to follow departmental policy alone does not rise to the level of a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("state-law violations provide no basis for federal habeas relief"); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (finding that inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Therefore, these claims are not a basis for habeas relief.

Because Scruggs has not asserted a valid claim for habeas relief, the habeas petition is denied. If Scruggs wants to appeal this decision, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because I find pursuant to 28 U.S.C. § 1915(a)(3) that an appeal in this case could not be taken in good faith.

For these reasons, the court:

(1) GRANTS the motion for extension of time (ECF 29);

(2) DENIES the motion to strike (ECF 32);

(3) DENIES the motion to reconsider (ECF 33);

(4) DENIES the motion for an investigation (ECF 36);

(5) DENIES the motion for discovery (ECF 39);

(6) DENIES the habeas corpus petition (ECF 2);

(7) DIRECTS the clerk to enter judgment and close this case; and

(7) DENIES Christopher L. Scruggs leave to proceed in forma pauperis on appeal.

SO ORDERED on September 23, 2024.

                                                          s/ Philip P. Simon
                                                          JUDGE
                                                          UNITED STATES DISTRICT COURT